IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:16-cv-2814-S-BN |
| | § | |
| 0.2853 ACRES OF LAND, MORE OR LESS, LOCATED IN DALLAS COUNTY, STATE OF TEXAS; CB TITTLE, LTD. and AR1 LAND, LTD.; ET AL., | § § § § § § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

This case was referred to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference from United States District Judge Karen Gren Scholer. *See* Dkt. No. 78.

As the parties have previously explained in a joint filing, "[t]he United States filed this case [against Defendants CB/Tittle, Ltd. and AR1 Land, Ltd. ("Defendants")] on October 4, 2016 to acquire 0.2853 acres of land in Dallas, Texas for the Federal Aviation Administration's [(the "FAA")] continued operation of a Terminal Doppler Weather Radar [(TDWR) facility]." Dkt. No. 27 at 1. In the United States' original complaint in condemnation, it explained that "[t]he public use for which said land is taken is to provide a land site and access for the continued operation of [the TDWR] facility ... which is critical to the National Airspace System." Dkt. No. 1 at 2 (emphasis

added).

In August 2017, defense counsel requested that the United States amend its original pleading to clarify the boundaries of the easement intended to be taken for the access road to the TDWR facility. *See* Dkt. No. 98 at Tab 3, E-mail from Charles A. Salazar to Daniel Kastner (Aug. 17, 2017, 1:43 PM). At that time, defense counsel acknowledged that "[t]he Complaint, in paragraph 4, asserts 'the land is taken to provide a land site and access[,]'" but defense counsel requested "that the Complaint be amended to identify the land to be acquired for access." *Id.* (emphasis added). The United States responded by explaining that "the legal description and survey attached to the complaint and declaration of taking" clearly identified the easement acquired for access to the TDWR facility. *See* Dkt. No. 98 at Tab 3, E-mail from Daniel Kastner to Charles A. Salazar (Aug. 22, 2017, 12:08 PM). Nonetheless, in March 2019, the United States filed a Notice of Filing Amendment to the Complaint with Declaration of Taking [Dkt. No. 80] and an Amendment to the Declaration of Taking [Dkt. No. 81] to "clarify the access road [easement] acquired as part of this proceeding." Dkt. No. 80 at 1.

On June 10, 2019, in response to the United States' amended pleading, Defendants filed a Motion to Sever the United States' Amendment to the Complaint and the United States' Amendment to the Declaration of Taking [Dkt. No. 96] from the United States' claim to the TDWR facility in its original complaint and declaration of taking. Complying with the Standing Order [Dkt. No. 90] in this case, the parties also filed a joint report on the matter. *See* Dkt. No. 97.

The issue presented in Defendants' motion is whether the United States' claim

-2-

to an easement over 2,639 square feet of road used to access the TDWR facility should be severed from the United States' underlying claim to .2853 acres of land on which the TDWR facility is located. The essence of Defendants' argument is that the land acquisition contemplated in the original complaint is a separate and independent taking from the easement acquisition. Defendants argue that trying the land and easement acquisitions together in a single case will be unduly prejudicial because it will force the fact finder to assess the value of two separate takings on two separate dates. Defendants further argue that Federal Rule of Civil Procedure 71.1(f) does not even authorize the United States to amend its original declaration of taking.

The United States responds that the original complaint and declaration of taking disclosed the acquisition of both the TDWR site and the easement for access and that the amended complaint and declaration only clarified this point – they did not alter the substance of the taking. Therefore, the United States argues, there is no need to assess the value of the two claims based on separate dates of taking. The United States also maintains that it has unilateral authority to amend its complaint and declaration of taking.

For the reasons explained below, the Court should deny Defendants' motion to sever [Dkt. No. 96].

## Background

In 1993 the FAA entered into a ten-year lease to build and operate a TDWR facility on a 0.2853-acre tract (the "Property"). The 1993 lease agreement specifically provided that it encompassed the Property and "a right-of-way for ingress to and egress

from the premises." Dkt. No. 97 at 14. The 1993 lease agreement was renewed for another term, and, in 2013, when the lease was set to expire, the Property's then-owner, Luminant Generation Co., LLC ("Luminant"), leased the Property to the FAA under a new lease agreement to begin on October 1, 2013, and to end on September 30, 2014. *See* Dkt. No. 35 at 7-15. The 2013 lease agreement also specifically provided that it encompassed the Property and "a right-of-way for ingress to and egress from the premises." Dkt. No. 97 at 14.

On March 24, 2015, Defendants acquired the tract of land on which the Property sits. Between the 2013 lease's expiration date and the date that Defendants gained an interest in the tract of land on which the Property sits, the FAA continued to occupy the Property and operate the TDWR facility. Defendants and the FAA subsequently attempted to negotiate a new lease or the voluntary sale of the Property, but their efforts were unsuccessful. On September 21, 2015, Defendants demanded that the FAA surrender possession of the Property. And, on October 4, 2016, the United States moved to acquire the Property by condemnation. *See* Dkt. No. 1.

The 2016 complaint in condemnation alleges that "[t]he public use for which said land is taken is to provide a land site and access for the continued operation" of the TDWR facility. Dkt. No. 1 at ¶4 (emphasis added). The United States' declaration of taking further provides that the land acquisition also includes an easement acquisition because the condemnation "is necessary for public use to provide a land site and access for the continued operation" of the TDWR facility. Dkt. No. 4 at ¶2 (emphasis added).

-4-

But, in August 2017, defense counsel contacted counsel for the United States, and, while Defendants acknowledged that the "land is taken to provide a land site and access," Defendants requested that the United States amend its pleading to provide clarity on the legal description of the access road leading to the Property. *See* Dkt. No. 98 at Tab 3, E-mail from Charles A. Salazar to Daniel Kastner (Aug. 17, 2017, 1:43 PM). Counsel for the United States responded to defense counsel's request by confirming that the condemnation action included an easement to access the TDWR facility. *See id.*, E-mail from Daniel Kastner to Charles A. Salazar (August 22, 2017, 12:08 PM). Defense counsel did not dispute or respond to the United States' position. Then, in March 2019, "the United States determined that an amendment to the declaration of taking would provide clarification, both for this case and for potential future landowners[,]" [Dkt. No. 97 at 24] so it obtained a survey of the access road and filed its amended complaint and declaration of taking on April 17, 2019. *See* Dkt. Nos. 80-81.

Three weeks later, Defendants filed their objection to the amended complaint and declaration of taking [Dkt. No. 93] and, on June 10, 2019, Defendants filed the their motion to sever under Federal Rule of Civil Procedure 21. *See* Dkt. No. 96. In their motion, Defendants contend that the condemnation of the Property and the easement are two separate takings that should be tried as two separate cases. *Id.* Defendants urge the Court to sever the two claims to avoid undue prejudice and unnecessary burden on the parties and this Court.

**Legal Standards**

Federal Rule of Civil Procedure 21 provides that a "court may ... sever any claim against a party." FED. R. CIV. P. 21. The movant bears the burden in seeking severance under Rule 21. *See Charalambopoulos v. Grammer,* No. 3:14-cv-2424-D, 2016 WL 5942225, *4-5 (N.D. Tex. Oct. 13, 2016). A claim may be suitable for severance "if it is misjoined or might otherwise cause delay or prejudice." *Applewhite v. Reichhold Chemicals, Inc.*, 67 F.3d 571, 574 (5th Cir. 1995); *see also* 7 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KANE, Fed. Prac. & Proc. Civ. §1689 (3d ed. 2018) (noting that the party moving for severance must show that "(1) it will be severely prejudiced without a separate trial; and (2) the issue to be severed is so distinct and separable from the others that a trial of that issue alone may proceed without injustice."). "A district court has wide discretion to sever a claim against a party into separate cases, in vindication of public and private factors." *In re Rolls Royce Corp.*, 775 F.3d 671, 680 (5th Cir. 2014).

While the United States Court of Appeals for the Fifth Circuit has not formally adopted a test to determine whether severance is warranted, courts have considered the following five factors when deciding to sever a claim under Rule 21: "(1) whether the claims arose out of the same transaction or occurrence, (2) whether the claims present common questions of law or fact, (3) whether settlement or judicial economy would be promoted, (4) whether prejudice would be averted by severance, and (5) whether different witnesses and documentary proof are required." *Id.* at 675 n.6 (internal quotations omitted). "Severance under Rule 21 creates two separate actions or suits

where previously there was but one. Where a single claim is severed out of a suit, it proceeds as a discrete, independent action, and a court may render a final appealable judgment in either one of the resulting two actions notwithstanding the continued existence of unresolved claims in the other." *United States v. O'Neil*, 709 F.2d 361, 368 (5th Cir. 1983).

In the context of condemnation proceedings, Federal Rule of Civil Procedure 71.1(b) provides that the United States "may join separate pieces of property in a single action, no matter whether they are owned by the same persons or sought for the same use." FED. R. CIV. P. 71.1(b). Courts have found that, in condemnation proceedings, the general practice is to try issues as to various tracts in one proceeding, and a landowner who claims a right to separate trials has a heavy burden of establishing the basis for such separate trials. *See Phelps Dodge Corp. v. Atchison, T. & S.F. Ry. Co.*, 400 F.2d 20 (10th Cir. 1986). And the Fifth Circuit has held that "[s]everance of interests in a condemnation proceeding is unusual," and, "in all but exceptional circumstances, the evidence should be presented to a single jury." *United States v. 499.472 Acres*, 701 F.2d 545, 549-51 (5th Cir. 1983). Thus, in condemnation proceedings, severing claims runs contrary to the generally accepted procedural practice.

## Analysis

Defendants appear to make two alternate arguments in support of their motion to sever.

First, Defendants argue that severance is warranted here because this case involves two separate and distinct takings on two separate dates: (1) a land acquisition

of the TDWR Property initiated in 2016; and (2) an easement acquisition of the access road leading to the TDWR Property initiated in 2019. Defendants contend that these two, "are, in fact, two separate condemnation proceedings." Dkt. No. 97 at 11. The crux of Defendants' argument is that, because the easement acquisition was not contemplated in the United States' original complaint and declaration of taking, amending the complaint and declaration of taking to include it now is unduly prejudicial.

Second, Defendants claim that Federal Rule of Civil Procedure 71.1(f) does not even authorize an amendment of a declaration of taking.

For the reasons provided below, the undersigned is not persuaded by either of these arguments and recommends that the Court deny Defendants motion to sever.

I. All five factors used to analyze a Rule 21 motion to sever weigh against <u>severing the claims in this case</u>.

While the Fifth Circuit has not expressly adopted a test for determining whether claims within a case should be severed from one another pursuant to Rule 21, the five-factor analysis described in *In re Rolls Royce Corp.*, 775 F.3d 671, is instructive. In that case, the court found that, when a reviewing judge determines whether severance under Rule 21 is warranted, consideration should be given to "(1) whether the claims arose out of the same transaction or occurrence, (2) whether the claims present common questions of law or fact, (3) whether settlement or judicial economy would be promoted, (4) whether prejudice would be averted by severance, and (5) whether different witnesses and documentary proof are required." 775 F.3d at 675 n.6.

      A.    The land acquisition and easement acquisition arise out of the same transaction or occurrence.

This Court has held that "[t]he 'same transaction' requirement is governed by a logical-relationship test." *Texas Instruments Inc. v. Citigroup Glob. Mkts., Inc.*, 266 F.R.D. 143, 148 (N.D. Tex. 2010). And a "transaction" is "a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." *Paragon Office Servs., LLC v. UnitedHealthcare Ins. Co.*, No. 3:11-cv-2205-D, 2012 WL 4442368, at *2 n.3 (N.D. Tex. Sept. 26, 2012) (quoting *Moore v. N.Y. Cotton Exch.*, 270 U.S. 593, 610 (1926)).

Defendants offer three main reasons in support of their position that the easement acquisition and the land acquisition do not arise out of the same transaction or occurrence:

    (1) The original complaint and declaration of taking does not give a legal description of the easement acquisition;

    (2) the metes and bounds of the easement were not determined until a March 2019; and

    (3) the authorization to acquire the easement was not issued by the FAA until April 2019.

*See* Dkt. No. 97 at 11.

But the United States's original complaint explains that the purpose of the condemnation proceedings is "to provide a land site <u>and access</u> for the continued operation of the Terminal Doppler Weather Radar." Dkt. No. 1 at ¶4 (emphasis added).

The United States' original declaration of taking also states that the land is necessary "to provide a land site <u>and accesses</u> for the continued operation of a Terminal Doppler Weather Radar" Dkt. No. 4 at ¶2 (emphasis added). Schedule A to the original declaration of taking states that the acquisition is a "TERMINAL DOPPLER WEATHER RADAR (TDWR) FACILITY SITE <u>AND ACCESS ROAD</u>." Dkt. No. 4-1 (emphasis added). And, Schedule B to the original declaration of taking identifies "PARK ACCESS ROAD." Dkt. No. 4-2. Thus, the original complaint and declaration of taking clearly contemplate the easement acquisition.

And the word "access" and the phrase "access road" sufficiently describe the tract of land at issue, where the 2,639 square foot piece of road appears to be the only point of egress and ingress to the TDWR facility. Dkt. No. 97 at 10. The United States was not required to detail in such specificity the easement's metes and bounds for it to be included in the original complaint. In condemning real property, Rule 71.1(c)(2)(C) only requires that the complaint contain "a description sufficient to identify the property" that is being taken. FED. R. CIV. P. 71.1(c)(2)(C). Defendants have stated that the government accessed the Property using the same access road for over two decades prior to this lawsuit under prior lease agreements. And it appears that the access road is the only point of ingress and egress to the TDWR facility. Under the circumstances, the United States provided sufficient description in its original complaint to identify the easement over the access road.

And, as Defendants have themselves pointed out in their statement, the access easement and the TDWR facility have been linked since the FAA first leased the

-10-

property. *See* Dkt. No. 97 at 14. Both the 1993 and 2013 lease agreements included an access easement over the access road at issue in this case. *Id.* The TDWR facility and the access road are inextricably tied together, as the taking of one is useless without the taking of the other. As the United States points out in its statement, "the access easement is essentially the driveway for the TDWR site," and the amended declaration of taking clarifies the description of the access road. Dkt. No. 97 at 32.

Defendants make much of the fact that the authorization to acquire the easement was not issued by the FAA until April 2019. This argument is particularly confusing where Defendants are the reason why the additional authorization was needed in the first place. The United States' position, as it explains throughout its brief, has always been that the 2016 complaint in condemnation encompasses the easement to the access road. It was only after Defendants sought clarification that the FAA underwent the additional process to obtain a survey and authorization of taking specifically for the easement. This was done to clarify that the original land acquisition included an easement acquisition as well.

The land acquisition and easement have a close logical relationship with one another – and are inextricably tied to one another. The two claims arise out of the same transaction or occurrence.

    B.    The land acquisition and the easement contain common questions of law <u>or fact.</u>

The common-question-of-law-or-fact prong of the five-part test is broadly interpreted and requires only that some common question of law or fact connects the

-11-

claims against Defendants. Not all the legal or factual questions to be addressed need be common to all the claims involved in this case. *See Texas Instruments Inc.*, 266 F.R.D. at 148 (N.D. Tex. 2010) ("The 'common question' requirement does not mean that multiple questions of law or fact must be common among the parties; it is satisfied by the presence of a solitary common question.").

Defendants argue that the "2016 Land Acquisition and 2019 Easement Acquisition do not present common questions of fact in that just compensation for the property rights condemned and damages to Defendants' remainder property must be determined as of two separate dates." Dkt. No. 97 at 11. The United States argues in response that "the amended declaration of taking merely clarified the access road" and that it would be inappropriate to value the TDWR facility and the access road on two separate dates because both were disclosed in the original declaration of taking. Dkt. No. 97 at 32 n.46. Regardless of each party's argument as to the appropriate date of valuation, Defendants have only pointed to one instance in which the two claims do not share a common question, and Defendants have not argued that the two claims do not share any common question of fact or law. It is not necessary for the land acquisition and easement to have every factual or legal issue in common in order for the claims to be heard jointly. Having just one common question of fact or law is sufficient to satisfy this prong. And so, Defendants' arguing that there is one question of fact that is not shared among the two takings does not mean that there are not other common questions among the two claims.

At bottom, this case is about the United States exercising eminent domain over

two adjacent pieces of land located within the same 24.125 acres of real property belonging to the same two landowners. As the United States points out, "both pieces of land will be valued under Federal condemnation law and the facts (comparable sales with access to public rights of way) should also be similar." Dkt. No. 97 at 32. The two claims share one end goal: to determine a just compensation for the FAA's acquisition and access to the TDWR facility. These two claims share common questions of fact or law.

        C.     <u>Maintaining one action promotes judicial economy.</u>

Although Defendants contend that trying the land acquisition and the easement acquisition together is impractical, Defendants make no arguments as to how severance would promote settlement or judicial economy.

But the United States argues that severing this case will "be highly inefficient for judicial purposes because the parties and the Court" would have to spend additional "time and expense" in conducting two separate trials. Dkt. No. 97 at 32. The United States also argues that severance would discourage settlement because the "United States is generally disinclined to value and settle separately a land interest that has been treated unitarily for over 25 years." *Id*.

The undersigned agrees with the United States and finds that severance in this case would not promote settlement or judicial economy.

        D.     <u>Maintaining one action would not prejudice Defendants</u>.

Defendants argue that they will face prejudice if this case proceeds through a single trial because they will be forced "to present evidence of two separate takings on

-13-

two separate dates," which would complicate their presentation of evidence at trial and might lead to jury confusion. Dkt. No. 97 at 12. In Defendants' view, "[i]t is impractical, if not impossible, to expect a jury to value the 0.2853 acres sought by the 2016 Land Acquisition as of October 26, 2016 and value the 2,639 square-foot access easement sought by the 2019 Easement Acquisition as of the date of the trial." *Id.* at 21.

The undersigned is not persuaded. Juries can, and often do, serve as fact finders in cases that contain multiple claims and complex issues. Defendants have offered no reason why this case should be any different.

> E. The land acquisition and easement involve either the same or substantially the similar witnesses and documentary proof.

The record in this case shows that the TDWR facility and its access road are in the same location and involve the same landowners. Furthermore, both the Property and the access road serve the same general purpose: to allow the FAA to maintain a TDWR facility, which is critical to its National Airspace System. The key witnesses and custodians of documentary proof for both parties are the same for both the land acquisition and the easement. Additionally, the United States has asserted that the "primary evidence of value will come from the same expert appraisers," [Dkt. No. 97 at 34], and Defendants do not dispute this assertion. Because the Property and its access road are so inextricably tied together, it is likely that severing the claim to the land acquisition from the easement acquisition will result in duplicative testimony and evidence as well as needless additional expense. This factor also weighs against severance.

II.  The United States is authorized to amend its complaint and declaration of <u>taking.</u>

Defendants also argue that the easement acquisition must be treated as a separate condemnation proceeding from the land acquisition because Federal Rule of Civil Procedure 71.1(f) does not authorize the amendment of a declaration of taking in a so-called "quick-take" proceeding. Dkt. No. 97. Defendants provide that because "title and the right to possess the property sought immediately vests in the Government" in a quick-take proceeding, allowing amendments to the complaint "would allow the Government to take additional property up to the date of trial, thereby preventing the landowner from adequately preparing and presenting a claim for just compensation." Dkt. No. 97 at 18.

Rule 71.1(f) states that a "plaintiff may – as often as it wants – amend the complaint at any time before the trial on compensation." FED. R. CIV. P. 71.1(f). Although this Court has not addressed the issue of whether the United States can amend its declaration of taking, several other federal courts have held that the United States has such authority to do so.

In *United States v. Holmes*, the United States Court of Appeals for the Fourth Circuit upheld a district court's ruling allowing the United States to amend its declaration of taking so the government could "make more definite and certain, and a matter of record ... the flowage easement [that] the government was taking." 238 F.2d 229, 230 (4th Cir. 1956). Similarly, in *United States v. 76.208 Acres of Land, More or Less in Horsham Twp., Montgomery Cty., Com. of Pa.*, a judge on the United States

District Court for the Eastern District of Pennsylvania held that the government was allowed to amend its declaration of taking because the government had made a mistake in its original declaration of taking by omitting the fact that the land being taken could be used for agricultural as well as light industrial purposes. 580 F. Supp. 1007, 1009-10 (E.D. Pa. 1983); *see also United States v. 1.41 Acres of Land*, Civ. No. 14-01781, 2015 WL 3661158, at *6 (N.D. Cal. June 12, 2015) (permitting the United States to amend its declaration of taking when the United States sough to limit the scope of an easement being taken).

Defendants rely on *United States v. 16,572 Acres of Land*, 45 F. Supp. 23 (S.D. Tex. 1942), to argue that the United States lacks authority to amend a declaration of taking. *See* Dkt. No. 97 at 18. But that case is inapplicable here. The court in *16,572 Acres of Land* held that the United States did not have the authority to amend its declaration of taking to dispose of a property interest it had already acquired. 45 F. Supp. at 27. The issue here – as framed by Defendants – is whether the United States is authorized to amend its declaration of taking to acquire an additional property interest. The undersigned is not persuaded by Defendants' reliance on *16,572 Acres*, and – based on the language of Rule 71.1(f) and the rulings in other federal courts – concludes that the United States is authorized to amend its pleading.

## Recommendation

For the reasons explained above, the Court should deny Defendants' Motion to Sever the United States' Amendment to the Complaint and Amendment to the Declaration of Taking. Dkt. No. 96.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: September 16, 2019

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE