IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| PLAINTIFF, | § | |
| | § | |
| v. | § | CASE NO. 3:16-CV-2814-S-BK |
| | § | |
| 0.2853 ACRES OF LAND, ET AL., | § | |
| DEFENDANTS. | § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b) and *Special Order 3*, this case has been referred to the undersigned United States magistrate judge for pretrial management. Before the Court is *Plaintiff's Rule 71.1 Motion to Exclude Defendants' Claims for Compensation that are Outside the Scope of this Condemnation*, Doc. 176. For the reasons stated below, the motion should be **GRANTED**.

**I. BACKGROUND**[1]

In 1993, the Federal Aviation Administration entered into a lease to operate a Terminal Doppler Weather Radar ("TDWR") on a 0.2853-acre tract in Dallas, Texas ("Property"). Three years later, the FAA built three structures on the Property: (1) a fence along its perimeter; (2) a single-story building; and (3) a 55-foot lattice tower with a TDWR sphere affixed at the top (these three structures will be referred to collectively as the "TDWR facility").

---

[1] Unless otherwise noted, the facts set forth in this section are taken from the June 5, 2018 *Findings, Conclusions, and Recommendation of the United States Magistrate Judge*, Doc. 65, which was accepted by the District Judge in its entirety, Doc. 69.

In 2015, the Property's then-owner sold the 24.125-acre tract of land that surrounds the Property to Defendants, CB/Tittle, Ltd. and AR1 Land, Ltd., who acquired 68 percent and 32 percent interests, respectively. Plaintiff and Defendants then attempted unsuccessfully to negotiate either a new lease or the sale of the Property. In September of that year, Plaintiff demanded that Defendants surrender possession of the Property.

A little over a year later, Plaintiff filed this action to acquire the Property and a 0.061-acre non-exclusive easement for the FAA to continue to operate the TDWR. Doc. 1, *passim*; Doc. 81. The ultimate issue here is the amount of just compensation to be awarded to Defendants. Doc. 1 at 2.

Addressing a different motion in the aforementioned June 5, 2018 *Findings, Conclusions, and Recommendation of the United States Magistrate Judge*, the Court determined that the "parent tract" is the 24.125-acre parcel:

> The parties agree that where the United States condemns only a portion of a larger parcel of land (the "parent tract") – as it did here – the appropriate measure of damages is the difference between the value of the parent tract before the taking and its value after the taking. *The parent tract in this case is the 24.125-acre parcel encompassing the TDWR facility and the Property on which it sits.*

Doc. 65 at 4-5 (emphasis added); *see also* Doc. 69 (accepting the magistrate judge's findings, conclusions, and recommendation in their entirety). Defendants did not file any objections to the same.

The year following that finding, Defendants produced two expert appraisals to Plaintiff—one from James Archibald and one from Joshua Korman. Doc. 176-2 at 8, 19. Both reports relied on a third report, which was generated by an aviation consulting group, Capitol Airspace Group. *See* Doc. 176-2 at 1, 8, 25. The Capitol Airspace report purportedly measured the effect of potential FAA action under 14 C.F.R. § 77 over 2,125 acres to the northwest of the TDWR,

2

concluding that the FAA may issue a "Notice of Presumed Hazard" for taller buildings in the area. Doc. 176-2 at 1-2. In turn, Defendants' counsel issued a "legal instruction" to Archibald and Korman that they should consider the parent tract to be a larger parcel of 786.2 acres in their analyses. Doc. 176-2 at 17-18. So they did, resulting in appraisals based on the parent tract measuring 786.2 acres rather than the 24.125-acre parcel that the Court previously deemed the parent tract. Doc. 176-2 at 8, 25-26.

In September 2023, Plaintiff filed the motion *sub judice*, seeking to "exclud[e] Defendants' claims for compensation that outside the scope of this condemnation and limit[] Defendants' evidence and trial testimony to the amount of just compensation owed for the acquisition of 0.2853 acres in fee and a 0.061-acre non-exclusive easement within a larger parcel of 24.125 acres owned by Defendants on October 26, 2016." Doc. 176. Essentially, Plaintiff argues that Defendants should not be allowed to introduce evidence that the parent tract is anything other than the 24.125-acre parcel. Doc. 176-1 at 30-31.

## II. APPLICABLE LAW

Federal Rule of Civil Procedure 71.1 governs federal eminent domain proceedings. Rule 71.1(h) requires the district court to decide all issues except the exact amount of just compensation to be awarded. *See United States v. Reynolds*, 397 U.S. 14, 19 (1970); *see also United States v. 320.0 Acres of Land, More or Less in Monroe Cnty., State of Fla.*, 605 F.2d 762, 819 (5th Cir. 1979) (the trial court's responsibility under Rule 71.1(h) is to screen all evidence and exclude from the factfinder's consideration evidence on which an award of just compensation cannot be based).

When a taking acquires only part of the condemnee's property, as here, "the exclusive use of the before-and-after method of valuation" must be utilized. *United States v. 8.41 Acres of*

3

*Land, more or less, Situated in Orange Cnty.*, 680 F.2d 388, 392 n.5 (5th Cir. 1982). This method "computes damages as the value of the actual land taken plus the diminution in the value of the remaining land in the parent tract . . . [e]quivalent to the sum of money obtained by subtracting the fair market value of what remains after the taking, from the fair market value of the whole immediately before the taking." *Id.* (quoting *Transwestern Pipeline Co. v. O'Brien*, 418 F.2d 15, 21 (5th Cir. 1969)). More succinctly, "[u]nder the before-and-after rule, the value of the entire tract is found prior to the taking, the value of the remainder is evaluated after the taking, and the difference equals the amount to which the owner is entitled." *United States v. 12.94 Acres of Land in the Cnty. of Solano*, No. CIV S-07-2172 FCDEFB, 2009 WL 4828749, at *5 (E.D. Cal. Dec. 9, 2009).

### III. ANALYSIS

#### A. Judicial Estoppel

Plaintiff asserts that judicial estoppel prevents Defendants from changing their position on whether the 24.125-acre parcel constitutes the parent tract. Doc. 176-1 at 26-30. Defendants, however, object to the application of judicial estoppel because they contend their "larger parcel determinations have never been before the Court." Doc. 179 at 14-17. Upon review, the Court finds that Plaintiff's position has merit.

"[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (citation and internal quotation marks omitted). The Supreme Court has refused to "establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial

4

estoppel," stating instead that different considerations "may inform the doctrine's application in specific factual contexts." *Id.*; *see also Reed v. City of Arlington*, 650 F.3d 571, 576 (5th Cir. 2011) (en banc) ("Because judicial estoppel is an equitable doctrine, courts may apply it flexibly to achieve substantial justice.").

Three considerations inform whether to apply the doctrine of judicial estoppel as Plaintiff requests: (1) the party against whom estoppel is sought has asserted a position plainly inconsistent with a prior position in the same or some earlier proceeding; (2) a court accepted the prior position; and (3) the party did not act inadvertently. *Flugence v. Axis Surplus Ins.*, 738 F.3d 126, 129 (5th Cir. 2013). At its core, the doctrine's purpose is to "protect the integrity of the judicial process." *Allen v. C & H Distribs., L.L.C.*, 813 F.3d 566, 572 (5th Cir. 2015) (citations omitted).

The foregoing considerations favor applying judicial estoppel in the case *sub judice*. First, Defendants have asserted plainly inconsistent positions with respect to what constitutes the parent tract. In making this determination, the Court can consider a party's pleadings, the party's sworn statements, and statements made by the party's attorney. *See Hall v. GE Plastic Pacific PTE Ltd.*, 327 F.3d 391, 396 (5th Cir. 2003) ("Statements made . . . by an attorney before the court can be imputed to a party and subject to judicial estoppel. . . . This Circuit has indicated that the doctrine [of judicial estoppel] applies to more than just sworn statements of a party and likewise has never specifically stated that it applies only to a party's sworn statements.").

Defendants previously made or acquiesced to several representations that the parent tract totaled 24.125 acres, but now assert that it is 786.2 acres. *See* Doc. 17 at 1, 3; Doc. 33 at 3; Doc. 68 at 8. First, the parties' *Joint Status Report*, which Defendants' counsel signed, stated:

> Defendants CB/Tittle, Ltd. and AR1 Land, Ltd. assert that they each own an undivided interest in 24.125 acres of land located north of Interstate 635 and east

5

>of South Beltline Drive, northwest of the intersection of Ranch Trail and Ranchview Drive in the City of Dallas, Dallas County, Texas. The United States filed its Complaint in Condemnation on October 4, 2016, seeking to acquire approximately 0.2853 acres for use as a land site for the operation of a Terminal Doppler Weather Radar ("TDWR") facility. The United States' estimate of just compensation was deposited with the Court on October 26, 2016, and fee simple title to the property vested in the United States.

Doc. 17 at 1. In a subsequently filed brief (the same brief the Court would consider in determining the parent tract), Defendants again represented that the scope of the entire property they owned was 24.125 acres:

>On September 30, 2014, CW PSF, LLC purchased a 24.125-acre tract from Luminant which included the Subject Property. On March 24, 2015, CB/Tittle, Ltd. and AR1 Land, Ltd., respectively, acquired a 68% and 32% undivided interest in the 24.125-acre tract from CW PSF, LLC.

Doc. 33 at 3. Even after the issuance of the June 5, 2018 *Findings, Conclusions, and Recommendation of the United States Magistrate Judge*, Defendants did not object to the Court's conclusion that the 24.125-acre parcel was the parent tract, and described only the 24.125-acre parcel as burdening the condemned tract of land in a subsequent filing:

>On September 30, 2014, the day the one-year lease expired, Luminant sold CW PSF, LLC the 24.125-acre tract burdened by the one-year lease of the Subject Property. On March 24, 2015, Defendants CB/Tittle, Ltd. and AR1 Land, Ltd. acquired a sixty-eight percent (68%) and thirty-two percent (32%) interest, respectively, in the 24.125-acre tract from CW PSF, LLC.

Doc. 68 at 7. They now claim, however, that a 786.2-acre parcel constitutes the parent tract, as contained in the reports of Archibald and Korman. Doc. 176-2 at 8, 25. In short, these representations are plainly inconsistent.

Second, as discussed previously herein, the Court determined that the parent tract was, in fact, the 24.125-acre parcel. Doc. 65 at 4-5.

Third, the record does not reflect that Defendants' non-disclosure was inadvertent, such that they did not have the relevant correct information at their disposal to begin with. *See*

6

*Flugence v. Axis Surplus Ins. Co.*, 738 F.3d 126, 129 (5th Cir. 2013); *Engines Sw., Inc. v. Kohler Co.*, 263 F. App'x 411, 413 (5th Cir. 2008) (per curiam) (citation omitted).  Indeed, Defendants have not established they were unaware of 786.2-acre parcel's existence, its connection to the 24.125-acre parcel, or any relationship between Defendants and the Billingsley Company when they made or acquiesced to the earlier representations or when they failed to object to the Court's determination that the 24.125-acre parcel was the parent tract.  *Flugence*, 738 F.3d at 130 ("[T]he controlling inquiry, with respect to inadvertence, is the knowing of facts giving rise to inconsistent positions.") (internal quotation marks and citation omitted).

It should be underscored that the Court determined that 24.125-acre parcel was the parent tract well before Defendants produced their experts' reports.  Doc. 65 at 4-5.  However, instead of instructing their expert witnesses that such was the case or correcting their experts' independent parent tract determinations, Defendants, at a minimum, allowed their experts to persist in a course of conduct that was inconsistent with the Court's previous ruling.  For Defendants to permit or encourage such (and for such conduct to be effectively ratified by the Court if it were to deny the relief requested here) would mean that court rulings are subject to review by a party or its expert witnesses, which is plainly not so.  *See Allen*, 813 F.3d at 572 (recognizing that judicial estoppel is intended to "protect the integrity of the judicial process") (citations omitted).  In conclusion, judicial estoppel prohibits Defendants from introducing evidence that disregards the Court's prior ruling.

### B.  *Standing of Non-Parties*

Plaintiff next contends that Defendants, in deeming the parent tract to be the 786.2-acre parcel, improperly seek to assert claims of non-parties, as Defendants own only the 24.125-acre parcel.  Doc. 176-1 at 24-26.  Defendants counter that they are not seeking damages for property

7

owned by non-parties, since legal control over the entities that make up the 786.2-acre parcel is vested in one entity—the Billingsley Company. Doc. 179 at 12-14.

Upon review, the Court concludes that this position provides an additional basis for granting its motion. In a condemnation action, a party claiming an interest in the land to be condemned bears the burden of proving entitlement to compensation as well as the amount of damages. *United States v. 429.59 Acres of Land*, 612 F.2d 459, 462 (9th Cir. 1980) (citations omitted); *United States v. Evans*, 380 F.2d 761, 762 (10th Cir. 1967) (citation omitted). But only that party who meets the burden of establishing an ownership interest in the property at the time of taking is entitled to receive just compensation. *United States v. Dow*, 357 U.S. 17, 20-21 (1958) ("Dow can prevail only if the 'taking' occurred while he was the owner.").

During discovery in this case, Defendants sought to depose a witness from the FAA about a litany of topics. Doc. 88-1, *passim*. Plaintiff, in turn, moved for a protective order, arguing that certain topics were irrelevant in that they related to water-tower proposals of the Billingsley Company, which is not a party to this case. Doc. 79 at 16-19. Defendants' response sought to provide context for such discovery:

> Defendants' 24.125-acre tract is part of a contiguous 826.4-acre parcel being developed by the Billingsley Company as Cypress Waters. The Billingsley Company serves as a single brand identification for the numerous business entities that own and control land in the Cypress Waters Development. Ultimately, all business entities that control the use and development of property within the Cypress Waters Development are controlled by Lucy Billingsley. Cypress Waters is a mixed-use development project that incudes office, commercial, retail, and multi-family uses.

Doc. 88 at 5-6. The Court rejected Defendants' explanation, deeming the information sought by the topics at issue irrelevant because it was "focused on a proposed water tower project *by an entity that is not a party in this matter*." Doc. 95 (emphasis added).

Yet Defendants highlight these same assertions in their response to the motion *sub judice*, seemingly ignoring the Court's earlier ruling that any claims of the Billingsley Company, as a non-party, are irrelevant:

> The Billingsley Company is a designation for 29 legal entities, including Defendants CB/Tittle, Ltd. and AR1 Land, Ltd., which owned property within the Cypress Waters development on the October 26, 2016 date of take. Legal control over the 29 entities is vested in Lucy Billingsley. Lucy Billingsley is the sole decisionmaker over the future use and development of the property owned by the 29 entities on the date of take.

Doc. 179 at 13-14 (footnote omitted). Alternatively, then, Plaintiff's motion should be granted on this basis as well, as only Defendants own the parent tract and any claims that the Billingsley Company or any other related entities may have are not properly before the Court.

## IV. CONCLUSION

For the foregoing reasons, *Plaintiff's Rule 71.1 Motion to Exclude Defendants' Claims for Compensation that are Outside the Scope of this Condemnation*, Doc. 176, should be **GRANTED**. Accordingly, evidence that contradicts the Court's prior determination that the parent tract is the 24.125-acre parcel should be **EXCLUDED**.

**SO RECOMMENDED** on March 12, 2024.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

9

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). An objection must identify the finding or recommendation to which objection is made, state the basis for the objection, and indicate where in the magistrate judge's report and recommendation the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).