**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** <br> **PLAINTIFF,** | § <br> § <br> § | |
| **V.** | § | **CASE NO. 3:16-CV-2814-S-BK** |
| **0.2853 ACRES OF LAND, ET AL.,** <br> **DEFENDANTS.** | § <br> § <br> § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b) and *Special Order 3*, this case has been referred to the undersigned United States magistrate judge for pretrial management. Before the Court is *Plaintiff United States' Renewed Motion Regarding the Court's Lack of Jurisdiction Over Defendant's Regulatory Taking Claims*, Doc. 267. For the reasons detailed here, the motion should be **DENIED** as premature.

## I. BACKGROUND[1]

In 1993, the FAA entered into a lease to operate a Terminal Doppler Weather Radar System ("TDWR") on a 0.2853-acre tract in Dallas, Texas (the "Property").[2] Three years later, the FAA built three structures on the Property: (1) a fence along its perimeter; (2) a single-story

---

[1] Unless otherwise noted, the facts set forth in this section are taken from the June 5, 2018 *Findings, Conclusions, and Recommendation of the United States Magistrate Judge*, Doc. 65, which was accepted by the District Judge in its entirety, Doc. 69.

[2] A TDWR uses Doppler radar to detect wind shears and developing microbursts and warn air traffic controllers. *Friends of Gateway v. Slater*, 257 F.3d 74, 76 (2d Cir. 2001).

building; and (3) a 55-foot lattice tower with a TDWR sphere affixed at the top (these three structures will be referred to collectively as the "TDWR facility").

In 2015, the Property's then-owner sold the 24.125-acre tract of land that surrounds the Property to Defendants, CB/Tittle, Ltd. and AR1 Land, Ltd., which acquired 68-percent and 32-percent interests, respectively. The Government then attempted unsuccessfully to negotiate with Defendants either a new lease or the purchase of the Property. In September of that year, the Government demanded that Defendants surrender possession of the Property.

In October 2016, the Government filed this action to acquire the Property and a 0.061-acre non-exclusive easement for the FAA to continue to operate the TDWR. Doc. 1, *passim*; Doc. 81. In total, the Government seeks to acquire 0.3463 acres of land. The salient issue in this civil action is the amount of just compensation to be awarded to Defendants. Doc. 1 at 2.

While the issues in this condemnation action should be relatively straightforward, this case has suffered a somewhat tortured past, including multiple motions and judge reassignments. Despite the Court's determination of a myriad of largely related and repetitive pretrial motions over the last ten years, the case has somehow eluded resolution either through trial or by dispositive motion. The motion *sub judice* is yet another such impediment to a conclusion.

**Previous Rulings**

On September 15, 2017, the parties filed a *Joint Motion to Modify Scheduling Order to Suspend Deadlines to Adjudicate Threshold Legal Issue*, in which they asserted:

> It has recently come to light that the parties dispute whether the existence of the Terminal Doppler Weather Radar should be considered in the before condition. This issue directly affects how the expert appraisers will value the subject property and should be decided before the parties exchange their respective reports.

> Resolving this issue now will ensure that both parties are correctly informed on a fundamental question, narrow the issues in dispute, and allow the parties to focus their resources on preparing reports that are consistent with federal eminent domain law and admissible at trial. Postponing adjudication of this issue until after the exchange of expert reports and discovery deadlines will not only result in expert reports that differ on a critical issue, but will also risk delaying this case.

Doc. 31 at 1. In relevant part, the parties sought "an evidentiary hearing to rule on the threshold issue of whether the existence of the TDWR should be considered in the [Property's] before condition" in determining the amount of compensation to be awarded. Doc. 31. The Court granted the motion, modifying the scheduling order, ordering the parties to file their respective motions and responses, and stating its intention to conduct an evidentiary hearing. Doc. 32.

On October 11, 2017, Defendants filed their *Brief on the Threshold Issue of Whether the Terminal Doppler Weather Radar Should Be Considered in Appraising the Before Condition of Defendants' Property*, arguing, *inter alia*, that the TDWR "should not be considered in the before condition of Defendants' property because the Federal Aviation Administration did not have legal authority to occupy the Subject Property on the date of taking." Doc. 33 at 1. In essence, they contended that the TDWR facility, which remained on the property in the interim between the date the lease expired and the date this condemnation suit was filed, should not be considered in determining the value of the property at the time of the taking. Doc. 33, *passim*.

Also on October 11, 2017, the Government filed its *Motion for a Legal Determination on the Before Condition of the Subject Property*, Doc. 34, and *Memorandum in Support*, Doc. 34-1. It argued that the property should be valued based on its condition on the date of taking, October 16, 2016—the date of the Government's deposit of $60,000, representing the estimated compensation. *See* Doc. 8 & Doc. 14. Quoting the language of 49 U.S.C. § 44502, the

Government further contended that the FAA had legal authority to maintain and operate the TDWR after the lease expired, since "the FAA may 'acquire, establish, improve, operate, and maintain navigation facilities' to ensure the safety of air traffic." Doc. 34-1 at 14. Defendants largely reiterated the arguments from their brief in Response, Doc. 37, and the Government followed suit in its Reply, Doc. 39.

Following delays due largely to lapses in government appropriations, reassignment to a different district judge, and a second settlement conference before a magistrate judge, an evidentiary hearing was held before Magistrate Judge David Horan on May 11, 2018. Doc. 63. Following the hearing, on June 5, 2018, Judge Horan issued *Findings, Conclusions, and Recommendation of the United States Magistrate Judge*, Doc. 65. The Court determined that the "parent tract" is the 24.125-acre parcel:

> The parties agree that where the United States condemns only a portion of a larger parcel of land (the "parent tract")—as it did here—the appropriate measure of damages is the difference between the value of the parent tract before the taking and its value after the taking. *The parent tract in this case is the 24.125-acre parcel encompassing the TDWR facility and the Property on which it sits.*

Doc. 65 at 4-5 (emphasis added). The magistrate judge also found that (1) the FAA lacked authority to operate the TDWR after the lease expired; (2) "[t]he parent tract's before condition should account for only the physical remnants of the TDWR facility," since the "FAA had no rights to continue occupying [the] Property to operate the TDWR" after its lease expired; and (3) accordingly, "the parent tract's before-condemnation value should account for only the TDWR's physical remnants and not the restrictions imposed by the TDWR's continued use." Doc. 65 at 14-18 (emphasis in original).

Defendants did not file an objection. However, in a pleading titled *United States' Motion to Modify in Part and Clarify in Part the Report and Recommendation,* the Government basically objected to all but the finding defining the parent tract. Doc. 66 at *passim*. Upon "making an independent review," the presiding district judge accepted the *Findings, Conclusions, and Recommendation of the United States Magistrate Judge* in its entirety, Doc. 69, and ordered that:

> in determining the before-condemnation fair market value of the 24.125-acre parcel, the appraiser must consider the physical remnants of the Terminal Doppler Weather Radar ("TDWR") that existed on the 0.2853-acre tract on the date of the taking, including (1) the fence along the perimeter, (2) the single-story building, and (3) the fifty-five-foot lattice tower with the TDWR sphere affixed at the top; but the appraiser must not consider the intangible restrictions associated with an operational TDWR.

Doc. 69 at 1-2. But what should have been the last word on the parameters of the evidence to be considered by the Court, unfortunately, was not.

In 2019, Defendants produced two expert appraisals—one from James Archibald and one from Joshua Korman. Doc. 176-2 at 8, 19. Both reports relied on a third report, which was generated by an aviation consulting group, Capitol Airspace Group. *See* Doc. 176-2 at 1, 8, 25. The Capitol Airspace report purportedly measured the effect of potential FAA action under 14 C.F.R. § 77 over 2,125 acres to the northwest of the TDWR, concluding that the FAA may issue a "Notice of Presumed Hazard" for taller buildings in the area. Doc. 176-2 at 1-2. In turn, Defendants' counsel issued a "legal instruction" to Archibald and Korman that they should consider the parent tract to be a larger parcel of 786.2 acres in their analyses. Doc. 176-2 at 17-18. The experts did so, resulting in appraisals based on the parent tract encompassing 786.2 acres rather than the 24.125-acre parcel that the Court previously deemed the parent tract. Doc. 176-2 at 8, 25-26.

In September 2023, the Government moved to "exclud[e] Defendants' claims for compensation that [were] outside the scope of this condemnation and limit[] Defendants' evidence and trial testimony to the amount of just compensation owed for the acquisition of 0.2853 acres in fee and a 0.061-acre non-exclusive easement within a larger parcel of 24.125 acres owned by Defendants on October 26, 2016." Doc. 176. Essentially, the Government argued that Defendants should not be allowed to introduce evidence that the parent tract is anything other than the 24.125-acre parcel previously determined by the Court. Doc. 176-1 at 30-31. The Court agreed and granted the motion, excluding evidence that contradicted the Court's prior determination that the parent tract is the 24.125-acre parcel. Doc. 241 (*Findings, Conclusions, and Recommendation of the United States Magistrate Judge*); Doc. 257 (Order Accepting). Based on this ruling in the Government's favor excluding the contested expert evidence, the Court found no reason to reach the Government's additional argument that Defendants are prohibited by the Tucker Act from seeking damages in this Court, rather than in the Court of Federal Claims, for property outside of that condemned here (to-wit: the parent tract). *See* Doc. 176-1 at 16-26.

It would appear settled by the Court's previous rulings that the Court will not consider, let alone attempt to exercise jurisdiction over, any claims for damages regarding property outside the parent tract, as every ruling of the Court thus far limits the compensation for the taking in this case to the specified condemned property. But as demonstrated by the filing of the instant motion, that obviously is not the case.

**Instant Motion**

The Government moves for an order excluding specific compensation claims by Defendants over the Property. Doc. 267 & Doc. 268. The Government once again argues that this Court lacks jurisdiction over Defendants' compensation claims under the Tucker Act because they are, in actuality, inverse condemnation claims seeking damages from the FAA's potential application of 14 C.F.R. § 77 on the Property. Doc. 268, *passim*. Defendants counter that the Government is attempting to "reframe the case" and its argument into something it is not, and that they merely seek compensation for the decrease in fair market value of the remainder property caused by the "operation" of the TDWR on the Property at the moment the condemnation occurred.[3] Doc. 269 at 6, 14.

## II. Applicable Law

### A. Rule 71.1

Federal Rule of Civil Procedure 71.1 governs federal eminent domain proceedings. Rule 71.1(h) requires the district court to decide all issues except the exact amount of just compensation to be awarded. *See United States v. Reynolds*, 397 U.S. 14, 19 (1970); *see also United States v. 320.0 Acres of Land, More or Less in Monroe Cnty., State of Fla.*, 605 F.2d 762, 819 (5th Cir. 1979) (the trial court's responsibility under Rule 71.1(h) is to screen all evidence

---

[3] The Court assumes that reference to the "operation" of the TDWR is a scrivener's error, as the district judge's order specifies that the Court "must consider the physical remnants" of the TDWR at the time of the taking. Doc. 69 at 1.

and exclude from the factfinder's consideration evidence on which an award of just compensation cannot be based).

When a taking acquires only part of the condemnee's property, as here, "the exclusive use of the before-and-after method of valuation" must be utilized. *United States v. 8.41 Acres of Land, more or less, Situated in Orange Cnty.*, 680 F.2d 388, 392 n.5 (5th Cir. 1982). This method "computes damages as the value of the actual land taken plus the diminution in the value of the remaining land in the parent tract equivalent to the sum of money obtained by subtracting the fair market value of what remains after the taking, from the fair market value of the whole immediately before the taking." *Id.* (cleaned up). More succinctly, "[u]nder the before-and-after rule, the value of the entire tract is found prior to the taking, the value of the remainder is evaluated after the taking, and the difference equals the amount to which the owner is entitled." *United States v. 12.94 Acres of Land in the Cnty. of Solano*, No. Civ S-07-2172, 2009 WL 4828749, at *5 (E.D. Cal. Dec. 9, 2009).

**B. 14 C.F.R. § 77**

Notice of constructing or altering any structure that exceeds the heights defined in 14 C.F.R. § 77.9 must be filed with the FAA at least 45 days before construction begins. Once notice is filed with the FAA, the FAA conducts an Aeronautical Study. The purpose of an Aeronautical Study is to determine whether the aeronautical effects of the proposed construction or alteration, or the cumulative impacts resulting from the proposed construction or alteration when combined with the effects of other existing or proposed structures, would constitute a hazard to air navigation. 49 U.S.C. § 44718(a)-(b).

Approximately ten different government offices take part in the Aeronautical Study. *See* 49 U.S.C. § 44718. An Aeronautical Study can take anywhere from two to nine months, depending on FAA resources and staff workloads. If, after the Aeronautical Study is conducted, the FAA's Obstruction Evaluation Group issues a Determination of Hazard, the local governmental entity responsible for development approval will prohibit the proposed construction. 49 U.S.C. § 44718(b)(2). "The FAA carries out these aeronautical studies and risk assessments on behalf of the Secretary [of Transportation]." *Backcountry Against Dumps v. FAA*, 77 F.4th 1260, 1272 (9th Cir. 2023) (Bress, J., concurring).

"A hazard/no-hazard determination has 'no enforceable legal effect.' The FAA lacks authority to prohibit a construction or alteration it believes to be hazardous to air navigation. Nonetheless, a hazard determination can hinder the project sponsor in acquiring insurance, securing financing or obtaining approval from state or local authorities." *BFI Waste Sys. of N. Am., Inc. v. FAA*, 293 F.3d 527, 530 (D.C. Cir. 2002) (citing *Aircraft Owners & Pilots Ass'n v. FAA,* 600 F.2d 965, 966 (D.C. Cir. 1979)). FAA determinations are reviewable orders by Court of Appeals for the District of Columbia Circuit or in the court of appeals of the United States for the circuit in which the person resides or has its principal place of business. 49 U.S.C. § 46110(a).

**C. Inverse Condemnation Claim**

"There are important legal and practical differences between an inverse condemnation suit and a condemnation proceeding." *United States v. Clarke*, 445 U.S. 253, 255 (1980). "Inverse condemnation is a cause of action against a governmental defendant to recover the value of property which has been taken in fact by the governmental defendant, even though no

formal exercise of the power of eminent domain has been attempted by the taking agency." *Id.* at 257. "A condemnation proceeding, by contrast, typically involves an action by the condemnor to effect a taking and acquire title." *Id.* Stated more succinctly, an inverse condemnation claim only lies when the "formal exercise of the power of eminent domain has [not] been attempted" by a governmental authority. *Clarke*, 445 U.S. at 257.

Cases in the Fifth Circuit draw a "distinction between damages allowable in the condemnation proceeding, and claims for damages that are not allowable because they seek to make the United States pay compensation in a condemnation proceeding for an alleged taking of land not formally condemned by the United States." *101.88 Acres of Land,* 616 F.2d at 770 (emphasis added). The Tucker Act precludes this Court's jurisdiction over an inverse condemnation claim involving more than $10,000 and over civil claims against the United States older than "six years after the right of action first accrues." *United States v. 4.620 Acres of Land, more or less, in Hidalgo Cnty., Tex.*, 576 F. Supp. 3d 467, 489 (S.D. Tex. 2021) (citing *101.88 Acres of Land,* 616 F.2d at 770 and 28 U.S.C. § 2401(a)).

## III. APPLICABLE LAW

### A. The Parties' Arguments

The Government argues that Defendants are jurisdictionally barred from asserting their claim for compensation in this Court because it is, in substance, an inverse condemnation claim against the United States. Doc. 267, *passim*. Specifically, the Government argues that Defendants' reliance on the mere *possibility* of future height restrictions under Regulation 77.9 as the basis for the compensation sought makes Defendants' claim an inverse condemnation claim. Doc. 268 at 13.

Defendants insist that they are not making an inverse condemnation claim but simply arguing that the TDWR's presence on the Property reduces the present fair market value of the remainder property. Doc. 269, *passim*. Defendants argue the mere existence of the regulatory regime under 77.9, and risk of a future hazard determination decreases the present value of the remainder property and should be factored in the determination of compensation for the taking. Doc. 269 at 6. In other words, they contend that potential buyers would discount today the offer price for the remainder property simply because of the mere fact of future uncertainty and delays attendant to trying to develop property situated near a TDWR, regardless of whether these potential pediments are actually realized.

In reply, the Government reiterates that "to the extent that Defendants claim they are owed compensation resulting from height limitations or delay imposed by 14 C.F.R. § 77, or the potential for such action, this Court lacks jurisdiction over such claims." Doc. 268 at 19.

In oral argument on the instant motion in April 2026, Defendants reiterated their position thusly:

> We are arguing that the government condemns the portion of land in the Declaration of Taking and that under . . . Fifth Circuit law, the use of that land can have effects or can cause the . . . the present value at the time of taking to go down for the remainder parcel.
>
> We're not worried about whether some notice of hazard happens in the future. We're not worried about what the FAA does. We're saying as of the date of taking, a buyer on the open market would much rather have a remainder parcel that does not have one of these [TDWR] systems functioning and does not limit the height of buildings that could be on the remainder parcel than one . . . that doesn't have to deal with that.

* * *

> It's as if a prison has been planted on a small part of our property and now the value of the entire property has been reduced right now. Not in the future. Right now[,] the value of our land has dropped precipitously because people don't want to be near [the TDWR].

Doc. 275 at 21.

## IV. ANALYSIS

### *A. The Government Wrongfully Seeks an Advisory Opinion*

At bottom, the Government seeks determination of issues already decided or not ripe for determination, to-wit, an advisory opinion, which the Court lacks authority to give.

In its previous Orders, the Court clearly defined the relevant parameters for determining just compensation in this condemnation case—both the before and after fair-market valuations are to be based on the 24.125-acre parent tract; and the before-appraisals must take into account the physical remnants of the TDWR that existed on the 0.2853-acre tract on the date of the taking but not the intangible restrictions associated with an operational TDWR. The Court's Orders already restricted any such potential claim by its definition of the parent tract and subsequent exclusion of intended evidence falling outside of that definition. Also, as stated *supra*, an inverse condemnation claim only lies when the "formal exercise of the power of eminent domain has [not] been attempted" by a governmental authority. *Clarke*, 445 U.S. at 257. That is not the posture of this case.

That notwithstanding, the issue the Government continues to press by the instant motion, even framed as a question of the Court's jurisdiction, is not ripe for adjudication. "[T]he federal courts established pursuant to Article III of the Constitution do not render advisory opinions," and the parties are required to present "concrete legal issues . . ." for determination. *Golden v.*

*Zwickler*, 394 U.S. 103, 108 (1969) (quoting *United Public Workers of America (C.I.O.) v. Mitchell*, 330 U.S. 75, 89 (1947)).

Here, the Government seeks a ruling that the Court lacks authority to adjudicate Defendants' claim of diminished present value based on the existence of the regulatory scheme that applies to certain potential uses of the parent tract. However, no such "claim" is before the Court at this stage. The "claim" the Government references are apparently arguments made in the context of the previously determined motions detailed *supra*:

> Defendants now admit that they are indeed seeking to recover for a regulatory taking. Specifically, Defendants acknowledge that they are seeking to recover for damages 'caused by the United States' use of the TDWR on the condemned property, which subjects the larger parcel to regulatory restrictions on building height,' Dkt. No. 252 at 16. *See also* Dkt. No. 258 at 11-12; Dkt. No. 261 at 2."

Doc. 268 at 15. So, in essence, the Government seeks to prohibit Defendants' prospective arguments on their mere theory of compensation. Here, no counterclaim has been asserted, trial had, nor dispositive motion filed (despite the undersigned's previous suggestion) that would place the issue squarely before the Court. And the Government also does not move, as previously, to exclude specific evidence on the basis that it is only relevant in an inverse claim and improper for the Court to consider.

At bottom, the Government's motion fails because the Court does not lack the authority to consider Defendant's theory of compensation, as it does not constitute a separate, inverse condemnation claim. And to reiterate, the Court takes no position on the ultimate merits or possibility of success of Defendants' posited arguments. Defendants must prove the reduction in fair market value for which they seek compensation. And without an offer of proof, the Court

cannot determine whether they can meet that burden. Thus, the Court finds only that Defendants are not prohibited from making their arguments based on a lack of subject matter jurisdiction.

*B. Alternatively, the Government's Motion Lacks Merit*

Without regard to the merit (or lack thereof) of Defendants' diminished-present-value arguments in their response to the instant motion, the Government mischaracterizes the argument and, thus, is not entitled to relief it seeks.

As an initial matter, the Government seemingly attempts to recharacterize Defendants' claims as ones they are not asserting. Again, an inverse condemnation claim only lies when the "formal exercise of the power of eminent domain has [not] been attempted" by a governmental authority. *Clarke*, 445 U.S. at 257. Here, the so-called "claim" at issue relates to the taking that is properly the subject matter of the instant condemnation action (as previously limited by this Court's rulings) and merely constitute arguments. The Court does not lack the authority to consider Defendant's theory of recovery, as it does not constitute a separate, inverse condemnation claim.

Although the Court agrees that "[t]he condemnation statutes do not waive sovereign immunity for property owners to [seek] damages for takings beyond the scope of the Government's filing," the Court's proper inquiry includes "the property described in the Government's filing." *Narramore v. United States*, 960 F.2d 1048, 1051 (Fed. Cir. 1992) (citing *United States v. 3,317.39 Acres of Land, more or less, in Jefferson Cnty.*, 443 F.2d 104, 106 (8th Cir. 1971), quoted in *101.88 Acres*, 616 F.2d 762, *passim*). In the instant case, Defendants seek compensation for the decrease in market value of its remainder property because of the condemnation of the 0.2853-acre parcel, which is listed in the Government's Declaration of

Taking. And again, Defendants' mere theory of compensation does not constitute a claim over which this Court lacks the authority to at least entertain such arguments.

## V. CONCLUSION

For the foregoing reasons *Plaintiff United States' Renewed Motion Regarding the Court's Lack of Jurisdiction Over Defendant's Regulatory Taking Claims*, Doc. 267, should be **DENIED**.

**SO RECOMMENDED** on September 10, 2026.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). An objection must identify the finding or recommendation to which objection is made, state the basis for the objection, and indicate where in the magistrate judge's report and recommendation the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).